**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **BAY.ORG, ET AL.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**RYAN ZINKE, ET AL.,**<br><br>Defendants. | **ORDER TRANSFERRING ACTIONS TO EASTERN DISTRICT OF CALIFORNIA**<br><br>CASE NO. 17-CV-03739-YGR |
| **GOLDEN GATE SALMON ASSOCIATION, ET AL.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**RYAN ZINKE, ET AL.,**<br><br>Defendants. | CASE NO. 17-CV-3742-YGR |

Plaintiffs have brought the above-captioned matters under the Administrative Procedure Act (the "APA"), challenging the Department of Interior's and the U.S. Fish and Wildlife Service's Endangered Species Act (the "ESA") review of the impacts of the California WaterFix project on certain species of wildlife (the "WaterFix Cases").[1] The Court understands that these cases may involve significant factual and legal overlap with a case pending in the Eastern District of California, *Natural Resources Defense Council et al. v. Ryan Zinke et al.*, No. 05-CV-1207 (E.D. Cal.) ("*Zinke*").[2] Thus, the Court ordered the parties to brief the issues relating to transferring the above-captioned matters to the Eastern District of California.

The parties filed simultaneous, opening briefs on August 11, 2017, and each filed responsive papers on August 18, 2017. Defendants support transferring the instant actions to the Eastern District, whereas plaintiffs oppose and believe the cases should remain before this Court.

---

[1] The Court refers to each individual matter as follows: *Bay.org v. Ryan Zinke*, No. 17-CV-3739 (N.D. Cal.) ("Smelt") and *Golden Gate Salmon Association v. Ryan Zinke*, No. 17-CV-3742 (N.D. Cal.) ("Salmon"). Unless otherwise noted, docket numbers herein refer to the docket in Smelt, No. 17-CV-3739.

[2] The Natural Resources Defense Council is a plaintiff in all three actions.

Having carefully reviewed the papers submitted, the Court **ORDERS** that the above-captioned matters be **TRANSFERRED** to the Eastern District of California.

## I. LEGAL FRAMEWORK

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The purpose of section 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotation marks omitted). "A motion for transfer lies within the broad discretion of the district court and must be determined on an individualized basis." *Sierra Club v. U.S. Dep't of State*, No. 09-CV-4086-SI, 2009 WL 3112102, at *2 (N.D. Cal. Sep. 23, 2009).

To support a motion for transfer, the moving party must show: "(1) that venue is proper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of the parties and witnesses and will promote the interest of justice." *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D. Cal. 1992). With regard to the third factor, courts evaluate the following factors to determine whether a transfer of venue would be appropriate: "(1) plaintiff's choice of forum; (2) convenience of the parties; (3) convenience of the witnesses; (4) ease of access to the evidence; (5) familiarity of each forum with the applicable law; (6) feasibility of consolidation with other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time of trial in each forum." *Sierra Club*, 2009 WL 3112102, at *2 (citing *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001)). Generally, in environmental cases brought pursuant to the APA, like the instant actions, the "most important factors for [courts] to consider are the plaintiff's choice of forum and any local interest in the controversy" because the other factors are, for the most part, not implicated. *Id.* (citing *Ctr. for Biological Diversity & Pac. Env't v. Kempthorne*, No. 07-CV-0894-EDL, 2007 WL 2023515, at * 5 (N.D. Cal. July 12, 2007)).

## II. BACKGROUND

The Court provides a brief description of the *Zinke* matter and the WaterFix Cases:

### A. *Zinke* Matter

The *Zinke* matter was originally filed in the Northern District of California on February 15, 2005 to challenge the U.S. Fish and Wildlife Service's (the "FWS") "analysis in its June 30, 2004 and February 16, 2005 Operating Criteria and Plan Biological Opinions." (*See* Order, *NRDC v. Norton*, No. 05-CV-690-CW, Dkt. No. 122 at 2 (N.D. Cal. Sept. 6, 2005) (the "Transfer Order").) In *Zinke*, the "FWS concluded that proposed changes in the coordinated operations of the Central Valley Project (CVP) and State Water Project (SWP), which provide water to much of California, would not harm the delta smelt." (*Id.*) Plaintiffs alleged in that action that the analysis conducted by the FWS was "arbitrary, capricious[,] and an abuse of discretion" in violation of the ESA and the APA, in part, because the FWS failed to "consider the available scientific data and the full effects of the action." (*Id.*)

On September 6, 2005, the district court in the Northern District issued an order transferring the action to the Eastern District of California, explaining thus:

> Plaintiffs correctly note that the cases do not involve identical factual records and legal duties. However, portions of the lengthy administrative record at issue in this action necessarily overlap with those in [other cases pending in the Eastern District], and Plaintiffs do not deny that trying these actions separately could result in inconsistent evaluations of FWS' analysis regarding the delta smelt, the resolution of which would consume additional judicial resources. There will be some duplication of effort if the two cases go forward in separate fora. Because both cases involve detailed administrative records, the amount of judicial effort at stake is considerable.

(*Id.* at 6–7.) Thus, on September 23, 2005, the *Zinke* matter was transferred to the Eastern District of California. (*Zinke*, Dkt. No. 126.) Since then, the matter has been litigated in the Eastern District and has involved several motions and much discovery. Recently, on March 1, 2017, plaintiffs filed their Fifth Supplemental Amended Complaint (*Zinke*, Dkt. No. 1071), to which several defendants have filed answers. The following summarizes the allegations in that complaint:

Plaintiffs have alleged that the case "centers on the long-term future operations of the massive [CVP] and [SWP] . . . as set forth in a June 30, 2004 document." (*Id.* at ¶ 3.) Specifically, plaintiffs allege that CVP and SWP "annually manage more than 11 million acre-feet of water" and as "part of their operations, the two projects run massive pumping facilities in the Delta, an estuary at the confluence of the Sacramento and San Joaquin Rivers in northern California." (*Id.* at ¶ 4.) Plaintiffs further claim that the "existing operations of these pumps have altered natural flow patterns in the Delta and San Francisco Bay," and that the same "have been major factors in the delta smelt's decline and its listing under the [ESA]." (*Id.* at ¶¶ 4–5.) Plaintiffs in the *Zinke* matter contend that the 2004 opinion and the superseding 2005 Biological Opinion are "legally invalid" because they failed to "analyze the factors Congress required be considered . . . and reached its 'no jeopardy' conclusion by relying on an undefined promise of 'adaptive management' that provides no assurance of protection whatsoever." (*Id.* at ¶ 12.)

The 2005 Biological Opinion was later invalidated by a federal court, and the FWS issued another Biological Opinion in 2008. (*Id.* at ¶¶ 14–15.) Following an en banc decision by the Ninth Circuit in 2014 requiring further consultation on the impact of continuing projects in the region, the bureau in charge of the CVP and SWP projects requested consultation with the FWS regarding the effects of certain contract renewals to the delta smelt and its critical habitat. (*Id.* at ¶ 16.) On December 14, 2015, the FWS sent a letter concurring with the bureau that the 2008 Biological Opinion analyzed the effects of the contracts on the delta smelt and its critical habitat. (*Id.* at ¶ 17.) Plaintiffs allege that the 2015 letter incorrectly concurred with the bureau because the 2008 Biological Opinion failed to address those issues adequately. (*Id.*) Additionally, the 2015 letter "impermissibly postpones a full analysis of the effects of the[se] contract renewals on the delta smelt to an unspecified future date." (*Id.*) On such bases, the plaintiffs in *Zinke* have alleged that the FWS "acted arbitrarily and capriciously in issuing its 2015 [letter] because FWS relied explicitly and exclusively on the 2008 [Biological Opinion], which did not adequately analyze the effects of the contract renewals on the delta smelt and its critical habitat." (*Id.* at ¶ 18.) Plaintiffs also bring claims against the defendants in *Zinke* for their alleged failure to reinitiate

consultation on the impacts of these contract renewals to "endangered Sacramento River winter-run Chinook Salmon . . . and threatened Central Valley spring-run Chinook salmon." (*Id.* at ¶ 19.)

### B. WaterFix Cases

The WaterFix Cases were both filed in this district on June 29, 2017. Both involve challenges to a June 26, 2017 Biological Opinion issued by the FWS and the National Marine Fisheries Service (the "NMFS"), regarding the California WaterFix Project. (*See* Smelt Complaint, Dkt. No. 1, at ¶ 1.) Plaintiffs allege that, as part of WaterFix, "the Bureau of Reclamation (Bureau) and the California Department of Water Resources (DWR) propose to construct three new water intakes on the Sacramento River." (*Id.* at ¶ 2.) Plaintiffs further allege that "WaterFix is the latest in a long line of water diversion projects and policies, including the [CVP] and the [SWP], which have had devastating effects on" both delta smelt (*id.* at ¶ 3) and Sacramento River winter-run Chinook salmon and Central Valley spring-run Chinook salmon (Salmon Complaint, Dkt. No. 1, at ¶ 3).

The complaint states that the FWS, pursuant to the ESA, must issue a biological opinion to analyze the effects of proposed actions on endangered and threatened species. (*See* Smelt Compl. ¶ 6.) Plaintiffs allege that the FWS's conclusion that the WaterFix project will neither jeopardize the survival of the delta smelt or salmon, nor cause adverse modification of its designated critical habitat, "runs contrary to the evidence before the [FWS] and relies on unlawful and unsupported assumptions." (*Id.*)

Defendants aver that the "majority of the preconstruction, construction, and operations of the [WaterFix] project are proposed to occur in Sacramento and San Joaquin counties," including "construction of the North Delta intakes and barge landings in the Sacramento River, and the dual conveyance tunnels." (Declaration of Souza (Dkt. No. 28-2), ¶ 5; *see also* Declaration of McLain (Dkt. No. 28-1), ¶ 7.) Additionally, defendants state that 85% of the designated critical habitat for delta smelt exists in Sacramento, San Joaquin, Solano, Stanislaus, and Yolo counties, and only the remaining 15% exists in the counties of Contra Costa and Alameda. (Souza Decl. ¶ 6.) Defendants further aver that the "proposed action for the [WaterFix] Biological Opinion includes operations of both new and existing [CVP] and [SWP] water conveyance facilities in the Delta

once the new California WaterFix facilities in the Delta become operational." (McLain Decl. ¶ 8.) Additionally, part of the WaterFix project analyzed in the Biological Opinions relies on the performance of certain habitat-related components of a 2009 biological opinion, related to the *Zinke* matter.

**III. DISCUSSION**

The parties do not dispute that venue is proper in either this district or in the Eastern District of California. *See* 28 U.S.C. § 1391(e). The dispute thus centers on whether transferring the instant actions to the Eastern District of California to be related to the *Zinke* action is in the "interest of justice." The Court evaluates the relevant factors below.

**A. Plaintiffs' Choice of Forum**

Plaintiffs contend that the Court should provide great deference to their choice of forum. "In ruling on motions to transfer venue, courts typically apply a strong presumption in favor of plaintiff's choice of forum." *Sierra Club*, 2009 WL 3112102, at *3 (citation omitted). "While plaintiff's choice of forum is to be given great weight, that choice is not the final word." *Id.* (citing *Pac. Car & Foundry Co. v. Pence*, 403 F.3d 949, 954 (9th Cir. 1968)). Additionally, courts accord little deference in cases "involving forum shopping" or cases in which "'the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter.'" *Id.* (quoting *Mission Ins. Co. v. Purina Fashions Corp.*, 706 F.2d 599, 602 n.3 (5th Cir. 1983)); *see also* Transfer Order at 7 (finding that plaintiffs' preference did not weigh heavily because they were "regional, State-wide or national organizations" and demonstrated no inconvenience in litigating in the Eastern District).

The Court finds that, while plaintiffs' choice of forum merits some deference, their choice is not afforded great weight in these circumstances. As in the *Zinke* matter—which was transferred from the Northern District to the Eastern District—plaintiffs are regional, State-wide or national organizations, and have not demonstrated that litigating in the Eastern District, where plaintiff Natural Resources Defense Council is already litigating the *Zinke* matter, would lead to

any substantial inconveniences.³ Additionally, while some of the effects of the WaterFix projects do impact the Northern District of California and plaintiffs' members who reside here, the majority of the operative facts, as well as the administrative record, are centered in the Eastern District of California. Thus, this factor weighs only slightly in favor of maintaining the action in this district.

**B.     Local Interests in the Eastern District**

The Court finds that the local interests of the Eastern District of California weigh in favor of transferring the instant actions, based on the evidence submitted by the parties. Defendants have proffered the declarations of Souza and McLain, who each work for the FWS and NMFS, respectively. As described above, both Souza and McLain aver that WaterFix construction projects will occur primarily within the boundaries of the Eastern District of California. Moreover, although such constructions will necessarily impact the flow of water in the Northern District of California and may affect the critical habitats for the smelt and salmon populations at issue in this litigation, Souza avers that 85% of smelt critical habitats that may be affected are within the Eastern District and only 15% in the Northern District. Furthermore, although not as relevant in the context of APA cases, which are mostly decided on the record, defendants also represent that any agency witnesses are located in the Eastern District within Sacramento. Thus, this factor weighs in favor of transferring these matters to the Eastern District of California.

**C.     Familiarity of Forum with Applicable Law**

Plaintiffs contend that this factor should not weigh in favor of transfer because federal judges in all jurisdictions are fully capable of applying the APA and the ESA. *GLT Technovations v. Fownes Bros. & Co.*, No. 12-CV-00466-RMW, 2012 WL 1380338, at *6 (N.D. Cal. Apr. 20, 2012). Although plaintiffs are generally connect, and choice of forum and the local interest of the transferee district are normally the most relevant factors in transferring environmental cases raising APA challenges, the significant factual and legal overlap between the instant matters and *Zinke* warrant significant consideration here.

---

³ The Court notes that attorneys from the Natural Resources Defense Council represent all the plaintiffs in the WaterFix Cases.

7

All of the cases involve detailed administrative records regarding the impact of certain projects on the delta smelt and salmon populations. While the WaterFix project involved in the instant cases is distinct from the CVP and SWP projects in *Zinke*, defendants have demonstrated—and the complaints here have acknowledged—that a relationship exists between the biological opinions at issue here and the CVP and SWP projects currently before Judge O'Neill in the Eastern District of California. Additionally, all of the cases are seeking similar relief, namely a declaration that the biological opinions issued were arbitrary and capricious and an order instructing the FWS to reinstate consultation with the relevant organizations to develop different plans for WaterFix and the CVP and SWP projects in the region. Consistency with respect to the nature and scope of such consultations, if any are necessary, would be efficient not only for the courts but also for the governmental agencies and other stakeholders interested in these ongoing projects. Logically, given the overlap in the issues, inconsistent rulings may result from having the cases not pending before the same judicial officer.

Furthermore, Judge O'Neill has gained not only factual and technical knowledge regarding the water systems at issue and the different water projects but also has knowledge of the consultation processes engaged in by the FWS and NMFS in producing the biological opinions at issue both here and in *Zinke*. Judge O'Neill has presided over this matter since April 2014, and *Zinke* has been pending in the Eastern District since 2005. Thus, the Court finds that transferring the instant actions to the Eastern District would result in significant gains in judicial efficiency.[4]

Accordingly, the Court finds that the balance of the relevant factors warrant transferring both of the instant actions to the Eastern District of California.[5]

---

[4] Plaintiffs further argue that transfer is inappropriate because the WaterFix Cases and *Zinke* are in different stages of litigation. Thus, any consolidation would either delay the resolution of *Zinke* or force the WaterFix Cases to be litigated on an expedited schedule. However, transferring the instant actions and then relating them to *Zinke* under Judge O'Neill need not necessarily result in the consolidation of all three cases. Moreover, any such concerns can be addressed in case management conferences before Judge O'Neill.

[5] While the Court recognizes that the Northern District's docket may be less congested than the Eastern District's docket, the Court finds that that consideration does not outweigh the interests of judicial efficiency here.

8

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the instant matters should be transferred to the Eastern District of California. These cases are hereby **TRANSFERRED** to the Eastern District of California, Fresno Division, pursuant to 28 U.S.C. § 1404(a). The Clerk shall transfer the files.

**IT IS SO ORDERED.**

Dated: August 30, 2017

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**